SECURITY PACIFIC NATIONAL BANK, APPELLANT, *v.* ROULETTE ET AL., APPELLEES.

[Cite as Security Pacific Natl. Bank *v.* Roulette (1986), 24 Ohio St. 3d 17.]

(No. 85-351—Decided May 14, 1986.)

18

*Baker & Hostetler, William W. Falsgraf* and *Haywood E. McDuffie,* for appellant.

*Dworkin & Bernstein Co., L.P.A.,* and *David J. Richards, Jr.,* for appellees.

*Per Curiam.* Section 1, Article IV of the United States Constitution requires that full faith and credit be given in each state to the judicial proceedings of other states. In *Miller* v. *Bock Laundry Machine Co.* (1980), 64 Ohio St. 2d 265, at 266 [18 O.O.3d 455], we addressed the scope of the Full Faith and Credit Clause and quoted with approval, Comment *b* to 1 Restatement of the Law 2d, Conflict of Laws (1971) 306, Section 101, which provides: "A foreign judgment for the payment of money will not be enforced in an amount greater than the amount, including costs, for which the judgment is enforceable in the state where it was rendered. This is true even though the judgment had been rendered in a larger amount. * * *"

The appellant, Security, argues that the trial court properly applied the foregoing standard in giving full faith and credit to its foreign judgment against the Roulettes. Security further contends that the court of appeals failed to give due deference to the trial court's findings and improperly applied California law when it reversed the trial court's judgment. We believe the record supports Security's position.

A reviewing court may not substitute its judgment for that of the trial court "simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court."

*Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 81. A trial court's decision *should* be reversed if it is clearly against the manifest weight of the evidence; but, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will *not* be reversed by a reviewing court as being against the manifest weight of the evidence." (Emphasis added.) *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

In its majority opinion, the court of appeals focused upon Security's failure to promptly notify the Roulettes that payments of $5,173.18 and $7,464.08 had been received from the Roulettes' "dealer reserve accounts," which were closed-out in mid-1980. The court of appeals majority reasoned that the Roulettes "would have known they still owed $22,724.04 [on the $120,000 settlement]" if Security had notified them of these payments. The court then held that "[o]n these facts, the actions of * * * [Security] constituted a waiver of the timely performance of the [$120,000] settlement agreement or in the alternative an estoppel."

We reject the foregoing determination. Although the record indicates that Security may have been lax in its bookkeeping, this laxity cannot reasonably be construed as a waiver of Security's right to enforce the terms of its judgment against the Roulettes. First, the payments from the Roulettes' closed-out, dealer reserve accounts were received by Security several months *after* the expiration, on February 5, 1980, of the $120,000 settlement agreement. While Security could have agreed to extend or modify that agreement, it did not do so. Any payments received by Security subsequent to February 5, 1980, therefore, properly would have been applied to the unpaid balance on the original judgment of $269,593.67—not to the balance on the $120,000 settlement agreement.

Second, the trial court, being in the best position to weigh the credibility of the proffered testimony, rejected the Roulettes' arguments in equity. The trial court held, in part:

"* * * The defendants [the Roulettes] had an obligation to pay, they were overdue as to such obligation and chose to ignore that obligation. The defendants are astute business persons cognicent [*sic*] of dealing with banks. It is unreasonable to assume that because one merely requests information on the balances due, that the debtor can sit back, do nothing and be released of obligation to perform. The defendants knew they had an obligation, they knew the amount of the obligation and failed to tender payment for almost 1½ years. Even with the credit for the reserve accounts, defendants failed to make the required tender of any funds."

Competent, credible evidence in the record supports the trial court's findings; its denial of equitable relief to the Roulettes is not against the manifest weight of the evidence; and, the court of appeals erred in its failure to give proper deference to the trial court's findings.

The Roulettes argue that even if Security's actions did not constitute a waiver or result in an estoppel, California law requires that Security demonstrate that it suffered actual damages as a result of the Roulettes'

non-compliance with the terms of the $120,000 settlement agreement in order to collect an amount in excess of that agreement. In support of this argument, the Roulettes rely heavily on the cases of *Chambreau* v. *Coughlan* (1968), 263 Cal. App. 2d 712, 69 Cal. Rptr. 783, and *Sybron Corp.* v. *Clark Hospital Supply Corp.* (1978), 76 Cal. App. 3d 896, 143 Cal. Rptr. 306.

In *Chambreau,* a debtor was found to have satisfied the terms of a settlement agreement and was thereby relieved of his obligation to pay a greater judgment, even though, as a result of a mistake by the debtor's bank, one of his payments on the settlement amount was not timely made. In *Sybron,* the parties entered into an agreement whereby the creditor could take a $100,000 judgment against the debtor if the debtor defaulted on an obligation to pay $72,000. The *Sybron* court found that enforcement of the agreement, after substantial payments had been made on the $72,000 obligation, would result in "a penalty which bears no rational relationship to the amount of actual damages suffered by * * * [the creditor]." *Id.* at 903.

The instant cause is readily distinguished from *Chambreau* in that the debtor therein was found to have *satisfied* the terms of the settlement—*i.e.,* his unintended failure to timely make one of his payments was not a material breach of the settlement agreement. There is no question that the Roulettes never satisfied the terms of their settlement agreement with Security; and, their failure to directly pay *any* amount of their obligation after January 1980 cannot be considered a technical breach of that agreement.

*Sybron* is also distinguishable from the instant cause because the parties herein stipulated to a judgment of $269,593.67 *after* Security had sustained the loss that was reflected in that judgment. In *Sybron,* however, the parties agreed to a judgment *before* the creditor had suffered any loss; and, when the creditor finally sought to enforce the agreed-upon judgment, it had "no rational relationship to the amount of actual damages suffered by * * * [the creditor]."

Based upon the foregoing, we cannot conclude that the balance due on Security's judgment, to the extent that it exceeds the amount due on the parties' settlement agreement, should be treated as an unenforceable penalty under California law. The judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.[2]

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

---

[2] Our decision today does not disturb the court of appeals' modification of the trial court's award of interest.